IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DORA L. ADKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:21-cv-00419 (RDA/JFA) |
| v. ) | |
| ) | |
| MERCEDES-BENZ USA, LLC, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

This matter comes before the Court on Plaintiff Dora L. Adkins' ("Plaintiff") *pro se* Amended Complaint (Dkt. 3). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Plaintiff has been afforded the opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but has not responded. Considering Mercedes-Benz USA, LLC's ("Defendant") Motion to Dismiss ("Motion") (Dkt. 7) together with Defendant's Brief in Support of the Motion (Dkt. 8), the Court GRANTS Defendant's Motion and further ORDERS Plaintiff to show cause as to why this Court should not impose a pre-filing injunction for the reasons articulated in this opinion.

I. BACKGROUND

A. Procedural Background

On April 2, 2021, Plaintiff filed a *pro se* Complaint against Defendant. Dkt. 1. Three days later, Plaintiff filed an Amended Complaint. Dkt. 3. On April 26, 2021, Defendant filed the instant Motion to Dismiss for failure to state a claim, accompanied by a *Roseboro* notice along with its brief in support of the Motion. Dkt. Nos. 7; 8. On April 30, 2021, Plaintiff sought leave to amend

the complaint a second time, which the Court rejected. Dkt. Nos. 9; 12. On June 3, 2021, Plaintiff filed an identical action with this Court and amended the complaint in that action on July 6, 2021. On July 30, 2021, this Court ordered Plaintiff to show cause as to why she filed a separate action regarding the same matter. Dkt. 14. On August 3, 2021, Plaintiff filed a motion to consolidate the two cases, which this Court granted on November 2, 2021.[1] In her Amended Complaint, Plaintiff seeks $1,500,000,000.00 in compensatory and punitive damages against Defendant due to the alleged intentional infliction of emotional distress Plaintiff suffered as a result of roadside assistance on the highway.

## B. Factual Background

On March 24, 2021, Plaintiff contacted Defendant's roadside assistance after her car's "engine cut off and the battery died" along the highway in the afternoon. Dkt. 3 ¶ 1. After speaking with numerous roadside assistance representatives of the Defendant and the Virginia Department of Transportation for a period spanning several hours, Plaintiff interacted with multiple tow truck drivers, who, according to Plaintiff's Amended Complaint, repeatedly failed to properly assist her. One tow truck driver notified Plaintiff that he could not locate the "tow eye" in the trunk of Plaintiff's car "because of so much stuff in [her] trunk." *Id.* ¶ 16. After nearly two hours had passed, that tow truck driver indicated to Plaintiff, in an allegedly angry fashion, that he needed to leave and instructed Plaintiff to remain insider her vehicle. Plaintiff then followed that driver to his vehicle and attempted to obtain identification information. Plaintiff then "secured the vehicle

---

[1] Without any apparent prompting, Plaintiff filed a letter on August 16, 2021, alerting this Court that she does not have COVID-19 and that she "was not going to take the COVID-19 Vaccine because the last several times [she] was administered a shot by an ER physician, [she] died from the injection that combined with the poisoning already in [her] system." Dkt. 19 at 1. Plaintiff then filed a letter on August 27, 2021 describing "HATE CRIMES" committed by a hotel against her where she was residing. Dkt. 21.

by locking the vehicle and took off walking and/or running as fast as possible to a Shell Service Station." *Id.* During this time, Plaintiff alleges that she "started to cry as [she] walked and/or ran in the mud to prevent from being hit by a vehicle" and that she "believed she might be run down by the Tow Truck driver." *Id.* Once she reached the Shell Service Station, Plaintiff reported the incident to police while in a "STATE OF SHOCK." *Id.* ¶ 17. When the Virginia state troopers arrived, Plaintiff recognized one of them as the same officer who had first come by earlier in the day to check on her and her vehicle. "Plaintiff knew at that moment that it had been a plot to allegedly murder [her]." *Id.* ¶ 18.

Upon returning to her vehicle, a third tow truck driver arrived and towed the vehicle to a Mercedes-Benz dealership in Fredericksburg, Virginia at approximately 11:15 p.m. Plaintiff claims she slept in her car the entire night and waited for Service Manager Mike Holmes to arrive. While another employee of the dealership offered to assist her, Plaintiff refused and insisted that she "needed to wait for Mike Holmes." *Id.* ¶ 25. Further conflict ensued when Mr. Holmes arrived and informed Plaintiff that her car could not be serviced "due to prior problems with service of her vehicle." *Id.* ¶ 26. According to Plaintiff, Mr. Holmes "RUDELY AND LOUDLY" demanded that Plaintiff vacate the premises. *Id.* As the events of the day unfolded, Plaintiff alleged that a Fredericksburg police officer proceeded to publicly shame her in front of a fourth tow truck driver in front of the dealership. Moreover, that tow truck driver then allegedly damaged Plaintiff's automatic gear shift. In all, Plaintiff alleges she endured 21 hours of Defendant's "extreme and outrageous conduct," leaving Plaintiff in a "state of shock." *See generally id.* ¶¶ 37-62.

Indeed, this was not Plaintiff's only incident with having difficulty with tow truck drivers. On May 11, 2020, Plaintiff's vehicle also died and, while the tow truck driver did not trouble Plaintiff with finding a "tow eye," he allowed Plaintiff's vehicle to "remain in a slanted upward

3

position too long on the flat bed" which "caused damage to the rear suspension springs." *Id.* ¶¶ 2-4.

### C.  Plaintiff's Serial Filing

Plaintiff is a serial filer before this Court and other courts across the Commonwealth of Virginia, having filed dozens of cases in state court.  In 2017, the Virginia Supreme Court reviewed 41 of Plaintiff's cases and determined that she had "a history of (1) filing duplicative, vexatious lawsuits, (2) without any objective good faith basics, and (3) at the expense of the court system and opposing parties." *Adkins v. CP/IPERS Arlington Hotel LLC*, 293 Va. 446, 452 (2017).  The court observed that Plaintiff's filings evidence "the troubling extent of her willingness to litigate the most minor injury, whether real or perceived." *Id.* at 454.  Addressing her serial filings, the Virginia Supreme Court imposed a pre-filing injunction on Plaintiff requiring her to obtain leave to file any documents before the Virginia Supreme Court.  *Id.*

However, Plaintiff remains a serial filer in the federal system, having appeared before this Court in 22 *pro se* cases since 1997 in which this Court has dismissed Plaintiff's frivolous complaints at the motion to dismiss stage.  *See e.g.*, *Adkins v. Dulles Hotel Corp.*, No. 1:20-cv-00361, (E.D. Va.); *Adkins v. Whole Foods Market Grp., Inc.*, No. 1:17-cv-1023 (E.D. Va.); *Adkins v. Pub. Storage*, No. 1:16-cv-1556 (E.D. Va.); *Adkins v. Alexandria Towers Investor, LLC*, 1:16-cv-00491; *Adkins v. Whole Foods Market Group, Inc.*, 1:16-CV-0031 (E.D. Va.); *Adkins v. City Of Fairfax-GMU Crimesolvers, Inc.*, 1:15-cv-00879; *Adkins v. Bank of America, N.A.*, 1:14-cv-00563; *Adkins v. Fairfax Cty. Sch. Bd.*, 1:09-mc-00027 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd., et al.*, 1:08-cv-00091 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:08-mc-00050 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:07-mc-00035 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:05-mc-00005 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:04-mc-00048 (E.D. Va.); *Adkins v.*

*Fairfax Cty. Sch. Bd.*, 1:03-cv-01177 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:04-mc-00053 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:99-cv-00304 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:98-cv-01071 (E.D. Va.); *Adkins v. Fairfax Cty. Sch. Bd.*, 1:97-cv-00835 (E.D. Va.); *Adkins v. HBL, LLC*, 1:17-cv-0074 (E.D. Va.). In 2018, this Court issued a pre-filing injunction, without leave of Court, against Plaintiff, which the Fourth Circuit vacated because the Court had not narrowly tailored its sanctions as required by *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004). *See Adkins v. Whole Foods Market Grp., Inc.*, No. 1:17-cv-1023, 2018 WL 10140020, at *3 (E.D. Va.) *vacated in part by Adkins v. Whole Foods Market Grp., Inc.*, 732 F. App'x 238 (4th Cir. 2018). Following the remand, this Court maintained that it "will consider monetary or other sanctions, as appropriate, to address any future frivolous, vexatious, or harassing lawsuits that" Plaintiff might file. Dkt. 125, *Adkins v. Whole Foods Market Grp., Inc.*, No. 1:17-cv-1023 (E.D. Va. 2020).

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) . . . requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible under this standard when a plaintiff pleads factual content sufficient for a court to make a reasonable inference that a defendant is liable. *Id.* Allegations that are conclusory are "not entitled to be assumed true." *Id.* at 681 (citing *Twombly*, 550 U.S. at 554-555). A court should "construe facts in the light most favorable to the plaintiff and draw all

5

reasonable inferences in [her] favor . . . [but] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal citations and quotation marks omitted).

It is without question that while a *pro se* complaint should be liberally construed, it neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

III.  ANALYSIS

A.  Intentional Infliction of Emotional Distress ("IIED") Claim

Plaintiff brings an IIED claim against Defendant alleging that Defendant has met each of the requisite showings of an IIED claim under Virginia law.  Defendant argues that Plaintiff's Amended Complaint cannot survive the *Iqbal* pleading standard due to the conclusory nature of Plaintiff's allegations and the fact that Plaintiff's allegations do not meet the demanding IIED standard.  Defendant also contends that even if Plaintiff's Amended Complaint met the pleading standard, Plaintiff fails to provide sufficient factual grounds for this Court to impose punitive damages.

To state an IIED claim in Virginia, a plaintiff must allege (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) "the emotional distress was severe." *Womack v. Eldridge*, 215 Va. 338, 342 (1974).  Moreover, Virginia courts disfavor IIED claims.  *See Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996) ("Because injury to the mind or emotions can be easily feigned, actions for intentional

infliction of emotional distress are not favored in Virginia."); *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008) ("[T]he tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury."). The Court applies each of the four IIED factors to the Amended Complaint in turn.

### 1. Intentional or Reckless Conduct

Plaintiff alleges that Defendant acted with intent or recklessness because its roadside assistance representatives "are allegedly incompetent to the point of not knowing how to assist Plaintiff with a tow[,] . . . by requesting a pin number which is not required; and by hanging up the telephone on the Plaintiff for no reason." Dkt. 3 ¶ 45. Additionally, Plaintiff contends that Defendant's contracting with a "dangerous and incompetent" tow truck driver who turned the Plaintiff's key backward in the ignition, could not open the hood, and refused to provide his business information upon Plaintiff's demand, demonstrates Defendant's intent or recklessness. *Id.* ¶ 46.

Defendant argues that none of the conduct described by Plaintiff constitutes specific intention or recklessness and instead point to evidence in the Amended Complaint that Defendant's representatives "were trying to help, rather than harm" her. Dkt. 8 at 8. Second, Defendant notes that it is not responsible for conduct attributable to third parties "over whom [Defendant] has no control." *Id.* at 9.

For Plaintiff to satisfy the first IIED element, she must demonstrate that "the defendant had the specific purpose of inflicting emotional distress or where the specific conduct was intended and the actor knew or should have known that emotional distress would likely result." *Dixon v. Denny's, Inc.*, 957 F. Supp. 792, 796 (E.D. Va. 1996). To meet this element, a plaintiff must do

7

more than simply plaster her complaint with conclusory allegations to the effect that a defendant had the requisite intent or recklessness. *See Balas v. Huntington Ingalls Indus., Inc.*, No. 2:11-cv-347, 2011 WL 4478864, at *13 (E.D. Va. 2011) (noting that the plaintiff failed to plead that the defendant "intended to cause her emotional distress or that it knew or should have known that such distress would result" with the bare assertion that the conduct was "reckless, continuous and outrageous"); *Ely v. Whitlock*, 238 Va. 670, 677 (1989) (rejecting a plaintiff's conclusory assertions that the defendant's allegedly wrongful conduct occurred intentionally and/or recklessly and noting that the complaint must plead that the conduct was specifically intended or that the defendant knew or should have known that emotional distress would result).

Here, Plaintiff has not taken the necessary step of demonstrating in her allegations that Defendant acted with either the specific intent to cause Plaintiff emotional distress or that Defendant knew or should have known that such distress would result. The Amended Complaint spends considerable keystrokes describing the alleged incompetence of multiple tow truck drivers—none of whom have been shown to be agents of Defendant. Nor has the conduct of Defendant's roadside representatives created a plausible basis to believe they were specifically intending, knew, or should have known that their conversations with Plaintiff would result in her severe emotional distress. As a result, Plaintiff's IIED claim fails to meet the first standard, and this deficiency is therefore fatal to her claim.

## 2. Outrageous and Intolerable

Plaintiff also alleges that Defendant's conduct constitutes extreme and outrageous conduct because of the effects it caused Plaintiff—her "severe, extreme, and debilitating STATE OF SHOCK, from fear and terror of being murdered by the first Tow Truck driver and/or the second Tow Truck driver." Dkt. 3 ¶ 38. Further, Plaintiff reiterates that Defendant contracted with

8

incompetent tow truck drivers and that she "should not have to go through an approximately 21-hour ordeal from start to finish of a Roadside Service request through Mercedes-Benz Roadside Assistance; four Tow Truck drivers from three Tow Truck Companies, and four Representatives for Mercedes-Benz Roadside Assistance" in order to have her vehicle towed.  *Id.* ¶¶ 40-41.

Defendant argues that Plaintiff has failed to assert any plausible claims demonstrating the high standard of outrageous conduct necessary to satisfy the second element and notes other cases in which far more plausible IIED claims were still dismissed.  Dkt. 8 at 9-11.

Meeting the second IIED element requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 27 (1991). Alleging that feelings were hurt or that conduct was offensive is not enough.  *Harris v. Kreutzer*, 271 Va. 188, 204 (2006) ("The outrageousness requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.") (internal quotation marks omitted).  In fact, "it is insufficient for a defendant to have acted with an intent which is tortious or even criminal." *Russo*, 241 Va. at 27.  To be sure, this element is rarely satisfied.  *See Crittendon v. Arai Americas, Inc.*, No. 2:13-cv-567, 2014 WL 31490, at *6 (E.D. Va. 2014) (noting that the second prong is "seldom met by plaintiffs under Virginia law").

Here, Plaintiff fails to plead a plausible set of facts that demonstrate Defendant's representatives acted in a manner "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Russo*, 241 Va. at 27.  Nor do Plaintiff's allegations with respect to the tow truck drivers—for whom Plaintiff provides no evidence Defendant is legally responsible—rise to the level of being

outrageous or intolerable. Plaintiff has not pleaded a sufficient factual basis to claim that the tow truck drivers and a Virginia state trooper were conspiring to murder her.

Plaintiff's claim again fails to meet the requisite IIED showings.

### 3. Causal Connection

The Court need not visit the third element as Plaintiff's Amended Complaint has not alleged any conduct that rises to the level of intentional infliction of emotional distress.

### 4. Severe Emotional Distress

Plaintiff also maintains that her emotional distress reached a "severe and dangerous level" due to the "intensity and duration of the emotional distress" and the fact that Plaintiff has "remained in bed except to complete the Complaint and the Amended Complaint and to respond to the dealership for repairs that need to be made to [her] vehicle." Dkt. 3 ¶ 50. As a consequence of this ordeal, Plaintiff further alleges that her state of shock has severely damaged her "brain and mind," which further contributed to the difficulty of writing her complaint. *Id.* ¶ 51.

Defendant counters that despite Plaintiff's sufferings, they do not rise to the level of distress experienced by other plaintiffs whose IIED claims were also dismissed by Virginia courts. Dkt. 8 at 12.

The Court need not visit the fourth element as Plaintiff has failed to demonstrate that she meets the first two IIED elements.

### B. Punitive Damages Claim

Plaintiff couples her IIED claim with a $750,000,000 claim for punitive damages against Defendant. The Amended Complaint asserts that Defendant should be subject to punitive damages because of its "misconduct or actual malice or recklessness" when the "fourth Tow Truck driver . . . claimed to not know the details of Plaintiff's Tow," the alleged "attempted premeditated

10

murder[] of Plaintiff" by the tow truck driver and Virginia state trooper, Plaintiff's inability to sleep for two nights due to nightmares from the incident, and Defendant's decision to contract with poorly performing tow truck companies. Dkt. 3 ¶¶ 53-61.

Defendant argues that the IIED claim is without merit and, therefore, no grounds remain for Plaintiff to advance a punitive damages claim. Dkt. 8 at 12-13. Moreover, even if the IIED claim survived the Motion, Plaintiff has not "pled a single plausible fact to show that [Defendant] acted willfully, wantonly, or maliciously." *Id.* at 13.

The Court finds that Plaintiff's punitive damages claim cannot survive the Motion because Plaintiff has failed to state a cognizable IIED claim in her Amended Complaint and she advances no other claims on which a punitive damages claim could join. *See Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 606 (4th Cir. 2006) (holding that because a punitive damages claim is derivative of an underlying claim for liability, the punitive damages claim survives only "if the defendant can[] be held liable for the underlying wrong"); *Graham v. Consolidation Coal Co.*, No. 1:13-cv-00011, 2014 WL 6983339, at *4 (W.D. Va. 2014) ("Under Virginia law, a claim for punitive damages is a remedy and cannot constitute a standalone cause of action.").

## C.  Imposition of a New Pre-Filing Injunction

In light of Plaintiff's continuous filing before the United States District Court for the Eastern District of Virginia, this Court considers the reimposition of a pre-filing injunction tailored to Plaintiff's circumstances and proclivities. The Fourth Circuit has held that the All Writs Act, 28 U.S.C. § 1651(a), grants "federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer*, 390 F.3d at 817. When a litigant demonstrates a "continuous abuse of the judicial process by filing meritless and repetitive actions," a court is authorized to

exercise its authority to employ appropriate sanctions on that litigant. *Id.* at 818. Prior to authorizing a limitation on filing, a court must first weigh the following factors:

> (1) the party's history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* Moreover, these factors are meant to assist the court in determining the likelihood that the litigant will "continue to abuse the judicial process and harass other parties." *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Lastly, in crafting a sanction, courts "must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Cromer*, 390 F.3d at 818.

While the Fourth Circuit vacated this Court's pre-filing injunction imposed on Plaintiff in 2018 for failure to properly tailor the sanction, this judge observes sufficient inexcusable behavior to merit imposing a sanction on Plaintiff's ability to continuously file new lawsuits without having her complaint screened. First, after having filed a second identical action before the Court, this Court consolidated that action with the instant Amended Complaint. That Plaintiff responded to this Court's denial of seeking leave to amend her complaint for a second time by filing an entirely new action regarding the same matter evidences her patent disregard of Court's orders. Furthermore, it suggests Plaintiff's propensity to file duplicative lawsuits and to harass this Court with other lawsuits involving "the most minor injury, whether real or perceived." *Adkins*, 293 Va. at 454.

Second, it is indisputable that Plaintiff has demonstrated a penchant for asserting far-fetched allegations without any concrete corroboration. For instance, the Court is troubled by Plaintiff's conclusory assertion that a Virginia state trooper conspired with numerous tow truck

drivers to attempt to murder her on the side of a highway after her car broke down. Moreover, the two letters that Plaintiff sent to this Court are nearly indecipherable and contain consistently implausible assertions, including the fact that Plaintiff has died on multiple occasions after receiving vaccine injections. They convey the same paranoid tone Plaintiff advanced in prior filings in other cases before this Court suggesting that multiple parties are essentially "out to get her." Therefore, sufficient grounds exist for this Court to question Plaintiff's ability to file good-faith claims in the future.

Third, in light of the pre-filing injunction placed on Plaintiff, this Court has now become Plaintiff's target for filing vexatious litigation. Plaintiff has filed five more cases before this Court since this Court attempted to impose pre-filing sanctions on Plaintiff less than five years ago. This pattern demonstrates the significant burden Plaintiff's numerous filings impose on this Court.

Fourth, this Court considers alternative sanctions such as imposing a fine for each frivolous case she files. However, no other alternative is likely to be effective in dissuading Plaintiff from filing such actions. Plaintiff paid the full $402 fee to file this Complaint, and in prior cases she has demonstrated good reason to believe her financial condition would not preclude her from continuing to file vexatious litigation before this Court. *See*, *e.g.*, *Adkins v. Dulles Hotel Corp.*, No. 1:20-cv-00361, 2020 WL 5846484, at *2 (E.D. Va. Sept. 16, 2020) (noting that Plaintiff "timely paid a total of approximately $30,000.00 over an eleven-month timeframe for guest rooms in the Hotel, accommodations including daily breakfast[,] and breakfast and dinner in the Hotel's Executive Lounge").

In light of this Court's analysis, this Court will require that Plaintiff show cause why this Court should not impose a narrowly tailored pre-filing injunction on Plaintiff requiring her to obtain leave of court to file new actions related to any of the events described in the Complaint.

## IV.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 7) Plaintiff's Amended Complaint (Dkt. 3) is GRANTED; and it is

FURTHER ORDERED that this action is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff show cause within (20) twenty days of this Order why this Court should not issue a pre-filing injunction as to any matters arising out of the facts of the instant Complaint before the United States District Court for the Eastern District of Virginia without Plaintiff first seeking and obtaining leave from this Court to file such action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Order to counsel and Plaintiff at her address of record.

It is SO ORDERED.

Alexandria, Virginia
March 1, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

14